[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16574
Non-Argument Calendar

_____

D. C. Docket No. 06-00127-CR-JEC-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LISA MELINDA LYLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 17, 2007)**

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Lisa Melinda Lyle appeals her 30-month sentence imposed following her

guilty plea for making false claims against the United States and fraudulently using another persons' identification to make false claims against the United States. For the reasons that follow, we affirm.

## I. BACKGROUND

In March 2006, a grand jury returned an indictment against Lyle, charging her with six counts of making false claims against the U.S., in violation of 18 U.S.C. § 287, and four counts of fraudulent use of another person's identification with the intent to make a false claim against the U.S., in violation of 18 U.S.C. § 1028(a)(7).

The indictment stemmed from a criminal enterprise that began in or about January 2000 and continued until approximately June 2002. Lyle perpetrated the scheme by offering to assist friends, acquaintances, and family members in filing their federal income tax returns and obtaining their personal information. After receiving these individuals' personal information (including their social security numbers), Lyle filed tax returns in their names using false information regarding, inter alia, employment, earnings, income tax withheld, and tax credits. In several instances, Lyle filed tax returns using the names and social security numbers of these persons without their knowledge or authorization. In many of the tax returns, Lyle applied for a refund anticipation loan ("RAL") on behalf of the purported

2

taxpayer.[1]  In the RAL applications, Lyle instructed the bank to pay the RAL proceeds either by issuing a check to an address where she, a friend, or a relative resided, or by depositing the proceeds into bank accounts in the names of herself, a friend, or a relative.  And in several of the tax returns, Lyle directed the Internal Revenue Service ("IRS") to deposit the claimed refunds into bank accounts held in her name or in the name of a friend or a relative.

During an IRS investigation, Lyle told investigators that her cousin, Rene Cook, was responsible for all of the questionable returns.  Betsy Smith, a friend of Lyle's, also told investigators that Rene Cook was responsible for the false returns.  Upon being informed that providing false information to federal investigators was a felony, Smith recanted her statement, said that Cook was not responsible for the returns, and said that Lyle had instructed her to blame Cook.  Smith also admitted that she had granted Lyle permission to deposit tax refunds into her account, that she followed Lyle's instructions regarding when and how to withdraw the funds, and that she had cashed two refund checks on Lyle's behalf.

Lasetta Jackson, Lyle's sister, told investigators that she allowed Lyle to use her bank account to receive tax refunds and that she had cashed one refund check

---

[1] Upon receipt of an RAL application, a bank contacts the Internal Revenue Service ("IRS") to verify that a tax return matching the applicant has been filed.  After a match is verified, the bank issues a loan to the applicant in an amount equal to the refund claimed on the applicant's tax return.  The loan is secured by a pledge of the taxpayer's anticipated refund.

for Lyle. Likewise, Lyle's mother, Rosetta Kemp, told investigators that she allowed Lyle to use her bank account to receive tax refunds. Kemp also stated that on at least one occasion, Lyle drove her to the bank and instructed her regarding how much money to withdraw. After withdrawing the funds from their respective bank accounts, Smith, Jackson, and Kemp gave all of the money to Lyle.

Lyle pleaded guilty to the indictment in its entirety without a plea agreement. The probation office then prepared a presentence investigation report ("PSI"), determining that Lyle's offense level was 19 based on, inter alia, a 2-level enhancement for the "unauthorized transfer or use of any means of identification to produce or obtain any other means of identification," pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(i), and a 2-level enhancement for being an organizer, leader, or manager in a criminal offense, pursuant to U.S.S.G. § 3B1.1(c). Based on a criminal history category of I, Lyle's Sentencing Guidelines range was 30 to 37 months' imprisonment.

Lyle raised four objections to the PSI, two of which are relevant to the instant appeal: an objection to the identification enhancement under U.S.S.G. § 2B1.1(b)(10)(C)(i) and an objection to the aggravating-role enhancement under § 3B1.1. At a sentencing hearing, the district court overruled Lyle's objections and sentenced her to 30 months' imprisonment as to each count, to run concurrently;

4

three years of supervised release; a $1,000 special assessment; and restitution in the amount of $74,419 to be paid to the IRS. This appeal followed.

## II. DISCUSSION

On appeal, Lyle argues that the district court erred in overruling her objections to the identification and aggravating-role enhancements. We review "the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts de novo." United States v. Humber, 255 F.3d 1308, 1311 (11th Cir. 2001) (citation omitted). Clear error is present when "we are left with a definite and firm conviction that a mistake has been committed" by the district court. United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (citation omitted).

### A. Identification Enhancement

Pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(i), a defendant receives a 2-level enhancement to her offense level if the offense conduct involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any means of identification." U.S.S.G. § 2B1.1(b)(10)(C)(i). "[T]he term 'means of identification' refers to any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any" social security number or access device. 18 U.S.C. § 1028(d)(7); U.S.S.G.

5

§ 2B1.1, comment. (n.9(A)). An "access device" includes, among other things, any "account number" that can be used to initiate a transfer of funds. 18 U.S.C. § 1029(e)(1). The Application Notes to § 2B1.1 set forth examples of the types of conduct to which the identification enhancement applies, including the following:

> A defendant obtains an individual's name and social security number from a source (e.g., from a piece of mail taken from the individual's mailbox) and obtains a bank loan in that individual's name. In this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully.

U.S.S.G. § 2B1.1, comment. (n.9(C)(ii)(I)).

Here, Lyle argues that the district court erred in applying this identification enhancement on the basis of the RALs because RALs are not "means of identification" within the meaning of § 2B1.1(b)(10). We disagree.

Lyle obtained the names and social security numbers of various persons under the guise of aiding them with filing their federal income tax returns, and, often without these persons' knowledge or permission, Lyle filed fraudulent tax returns using these persons' names and social security numbers. Based on falsely-claimed refunds in these tax returns, Lyle applied for and obtained RALs (bank loans) in these persons' names. Thus, Lyle used two means of identification—the names and social security numbers of unsuspecting persons who had not given their authorization—to unlawfully obtain another means of identification—RALs

6

with associated account numbers in these persons' names. In our view, Lyle's conduct is not meaningfully distinguishable from that described in the Application Notes to U.S.S.G. § 2B1.1(b)(10)(C)(i). See U.S.S.G. § 2B1.1, comment. (n.9(C)(ii)(I)). Accordingly, the district court did not commit clear error in applying the identification enhancement.

## B. Aggravating-Role Enhancement

The Sentencing Guidelines provides for a 2-level enhancement of a defendant's offense level if the defendant was an organizer, leader, manager, or supervisor of one or more other participants in the offense. U.S.S.G. § 3B1.1(c). A "participant" in the offense "is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). In determining whether the defendant acted as an organizer or leader of the offense, the court may consider factors such as, inter alia, the exercise of decision making authority, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others. Id., comment. (n.4). "[T]he assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." United States v. Jiminez, 224 F.3d 1243, 1251 (11th Cir. 2000). And the government need only

7

prove the defendant's aggravating role in the offense by a preponderance of the evidence. United States v. Yeager, 331 F.3d 1216, 1226 (11th Cir. 2003).

On appeal, Lyle argues that the Government failed to prove by a preponderance of the evidence that she was an organizer, leader, manager, or supervisor of other participants in her offense of conviction. We disagree.

Smith, Jackson, and Kemp told IRS investigators that (1) Lyle recruited[2] them to allow the use of their bank accounts for the direct deposit of fraudulently obtained tax refunds; (2) Lyle instructed them regarding when to withdraw the funds and how much of the funds to withdraw; and (3) after withdrawing the fraudulently obtained funds from their respective bank accounts, they gave all of the money to Lyle at her direction. Moreover, Smith stated that Lyle instructed her to lie to IRS investigators, and she admitted that she endorsed and cashed two of the fraudulent refund checks at Lyle's direction. And Smith, Jackson, and Kemp each allowed Lyle to file at least two fraudulent tax returns in their names. On this record, we conclude that the Government proved by a preponderance of the evidence that Smith, Jackson, and Kemp were "recruited" by Lyle as "participants" in Lyle's criminal enterprise, Lyle exercised control and authority over these participants in carrying out the aims of the criminal enterprise, and Lyle retained a

---

[2] The word "recruit" is defined as, among other things, "to secure the services of." Merriam-Webster Online Dictionary, http://www.m-w.com (last visited June 25, 2007).

larger share (indeed, all) of the fruits of the crime. Accordingly, the district court did not commit clear error by imposing a 2-level enhancement to Lyle's offense level pursuant to § 3B1.1(c)

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.